In re HEMSTREET.

(District Court, N. D. Iowa, C. D.   September 3, 1903.)

1. BANKRUPTCY—LIENS FRAUDULENT UNDER STATE LAW.

A bill of sale from a bankrupt to his wife, and notes and a chattel mort- gage executed by him to his brother, both bill of sale and mortgage cover- ing all his personal property and crops, and all he should acquire or raise during a certain number of years, *held* fraudulent, as attempts to cover his property, and void as to creditors under the law of Iowa.

2. SAME—CLAIM OF WIFE TO PROPERTY.

Under the law of Iowa which precludes a wife from asserting owner- ship of personal property against creditors of her husband where she has permitted such property to pass under his control, and to be used and dealt with by him as his own, such claim cannot be asserted against his trustee in bankruptcy.

3. SAME—CLAIM BASED ON FRAUDULENT SECURITY—ESTOPPEL.

Where the only claim filed by the brother of a bankrupt against his estate was based on notes and a mortgage which are clearly fraudulent, he will be held bound by such action, and will not be permitted to prove the claim as one for wages for labor and entitled to priority.

4. SAME—EXEMPTIONS—TOOLS OF FARMER.

A cream separator is a tool or instrument of a farmer within the mean- ing of Iowa Code, § 4008, and is exempt as such thereunder on his bank- ruptcy.

In Bankruptcy.   On exceptions to ruling of referee on claims of Robert C. Hemstreet and Millie F. Hemstreet and on claim of bank- rupt on matter of exemptions.

See 117 Fed. 568.

E. A. Morling, for trustee and creditors.

J. M. Whitaker and John Menzies, for claimants and bankrupt.

SHIRAS, District Judge.   In this case the wife of the bankrupt, Millie F. Hemstreet, asserts a claim, as a creditor of her husband, for some $200, based upon a bill of sale dated February 23, 1901, which purported to convey to the wife all the horses, cattle, grain, farming implements, and all other personal property of every kind owned by the husband, and also "all crops of every name, nature, and description raised during the years 1901, 1902, and 1903 on the farm rented by me of 265 acres.   *  *  *   This bill of sale is in- tended to cover all and singular all property of every nature I now own, and all property that I may acquire for the next five years, subject, however, to valid liens of record against said property." The referee held that this bill of sale was fraudulent, in that its purpose evidently was to cover up the property of the husband, and protect it against his creditors, he being in debt at the time of its execution, and no other conclusion could possibly be reached with respect thereto.   The ruling of the referee rejecting the claim is therefore affirmed.

The wife of the bankrupt also asserted a claim against the trus- tee for a mare and colt, which she claimed belonged to her; but which were taken possession of by the trustee.   She testifies that her brother-in-law about the time of her marriage had made her a

gift of a horse, which was afterwards exchanged for a mare, and she asserts ownership in the mare and her offspring. The evidence shows that these animals passed into the control of the husband, and were dealt with as the other property on the farm, and the facts, under the ruling of the Supreme Court in Porter v. Goble, 88 Iowa, 565, 55 N. W. 530, justified the holding of the referee that, as against creditors, the wife could not assert an ownership of the property.

The claim of Robert C. Hemstreet is to the effect that he had worked as a laborer upon the farm rented by the bankrupt under an agreement whereby he was to be paid $18 per month, in addition to his board, the sum claimed being $205, for the period extending from February 20, 1901, to March 1, 1902; it being also averred that on August 29, 1901, the bankrupt executed to him four promissory notes for $122 each, payable on the 1st days of December 1902, 1903, 1904, and 1905, and also executed a chattel mortgage to secure payment of these notes upon all the personal property owned by the bankrupt, including the crops raised by the bankrupt, and even including the watch owned by the bankrupt. It passes all belief that the bankrupt, in executing these notes and mortgage, only intended to secure the wages that might be earned by his hired hand in the four years succeeding the date of the mortgage. The notes and mortgage are clearly void as against creditors. The doubtful question is whether the claim should be recognized as a debt due for wages earned. The claim, as originally filed, was based solely on the notes and mortgages. Subsequently a petition was filed by the claimant setting forth the fact that he had filed a claim for $205, based upon the four notes and mortgage; that the trustee had taken possession of the mortgaged property, and, without recognizing the lien of petitioner, had sold the property; that the notes and mortgage were given in evidence of the amount due the claimant for labor done and to be performed under the contract in the future; that the chattel mortgage had been duly recorded, and therefore the petitioner prayed that his claim be allowed in the sum of $205, with interest; that the same be declared a debt due for labor, and be given priority; that the amount due be declared a special lien on the property included in the chattel mortgage and on the proceeds thereof in the hands of the trustee, and that claimant be paid in full therefrom. The only claim filed before the referee on behalf of Robert Hemstreet is that based upon the notes and mortgage. The petition subsequently filed relies on the mortgage, and asks its enforcement, and then recites that there is a sum of $205 due as wages. The notes and mortgage are void as against creditors, and strictly there is no claim pending for wages due. The petition subsequently filed seeks to enforce the fraudulent mortgage as well as to set up a claim for wages due, but the attitude of the claimant does not appeal to the favor of the court. It is so evident that the bankrupt sought to cover his property by giving mortgages to his wife and brother, to secure claims of doubtful merit, that suspicion is cast upon these claims in whatever form they are presented. The equity of the situation is not such as to require the court to

place the claimant in any other position than that he assumed in filing his claim, and that is as the payee of the notes secured by the fraudulent mortgage. In that position the claimant is not entitled to the relief prayed for. It is possible that there is due some amount, as wages, from the bankrupt; but as the claimant has rested his claim upon the notes and mortgage he must abide the conclusion thereon, and, they being invalid, he is not entitled to other relief against the creditors.

The bankrupt asks to be allowed the value of a cream separator and of a calf, which he claims were exempt to him under the laws of Iowa, and which were taken possession of by the trustee, and by him sold and disposed of. I see no good reason for holding that a cream separator may not be a tool or instrument of a farmer within the meaning of section 4008 of the Code of Iowa. The selling of cream from milk given by the cows owned by farmers has become one of the recognized methods of carrying on ordinary farming in this state, and the tools or instruments used in connection therewith are therefore exempt under the section just cited. Under the terms of section 4017 of the Code, as construed by the state Supreme Court in Grover v. Younie, 110 Iowa, 446, 81 N. W. 684, the failure to insist upon the exemption at the time the separator was taken by the trustee does not defeat his right thereto. The trustee testifies that he realized $65 from sale of the separator, and this sum he must pay out of the proceeds of the estate to the bankrupt. Under section 4008 of the Code the bankrupt was entitled to hold as exempt two cows and two calves. As I understand the evidence, the cows were set apart to the bankrupt, but the trustee took away a calf, over the protest of the wife of the bankrupt, he being absent at the time, without leaving two calves to meet the exemption. The bankrupt is entitled to $8 as the value of this calf, and this sum will also be paid him by the trustee out of the estate in his hands. A claim is also made for $50 for crops alleged to have been taken by the trustee from the 40 acres of the farm which the bankrupt claims was his homestead. The creditors show that their debts were incurred before the homestead right, if any, accrued, and it is also claimed by the trustee that the bankrupt used more of the grain, hay, and products of the farm than he was justly entitled to. Under these circumstances it is not made to appear that this claim is a just one, and the same cannot be allowed.